UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA BARRY,<br>    Plaintiff<br><br>v.<br><br>UMASS MEMORIAL MEDICAL<br>CENTER, INC.<br>    Defendant. | CIVIL ACTION<br>NO. 16-40104-TSH |

**MEMORANDUM OF DECISION AND ORDER ON
DEFENDANT'S PARTIAL MOTION TO DISMISS**
**March 28, 2017**

**Introduction**

Plaintiff Cynthia Barry ("Plaintiff") asserts a several claims against her former employer UMass Memorial Medical Center, Inc. ("UMass" or "Defendant"). In her Complaint, the Plaintiff alleges a number of claims based on her alleged wrongful discharge from employment. UMass moves to dismiss all but two counts of Plaintiff's seven count Complaint. For the reasons set forth below, the partial motion to dismiss is *granted*.

*Procedural and Factual History*

The following facts are taken from Plaintiff's verified complaint and assumed true for the purposes of these motions. Cynthia Barry is an individual who resides in Worcester, Massachusetts and is a licensed respiratory therapist. She was hired by UMass on June 18, 2007 to work at the Worcester Memorial Campus. While employed by UMass Memorial, the Plaintiff's employment was subject to the terms and conditions set forth in the collective

bargaining agreement ("CBA") entered into between State Healthcare and Research Employees ("SHARE" or the "Union") and UMass Memorial. The CBA provides a grievance procedure and outlines the disciplinary process.[1] Plaintiff asserts that proper procedure was not followed.

On the night of October 31, 2015, Plaintiff worked the night shift, which was her usual shift, and retrieved respiratory medication twice for a patient using the correct procedure for accessing drugs. On November 1, 2015, Plaintiff was called in by a supervisor and told to not return to work. She was put on paid investigative leave without explanation. Plaintiff was called to a meeting the following day and accused of breaking an envelope and taking narcotic medications. Plaintiff denied all allegations.

Plaintiff was allegedly threatened that she would be reported for committing a crime. Connie St. Amand, the Human Resource Representative, at the meeting, mocked Plaintiff and told her she was guilty. Plaintiff requested to bring counsel to another meeting with Ms. St. Amand, who refused to allow Plaintiff's counsel to attend the meeting. Plaintiff did not attend the second meeting. Plaintiff's employment was terminated on November 17, 2015. UMass ultimately determined that it had "concluded our investigation of multiple Pyxis discrepancies. We conclude that a common individual, Cynthia Barry, a respiratory therapist was involved in four 94) different discrepancies." After requesting and receiving her employment records, however, Plaintiff contends that the records contain "no evidence of wrongdoing: and "[n]o evidence of theft of drugs … have been produced ..."

Plaintiff then filed a lawsuit in Worcester Superior Court. She asserts the following claims in her complaint: (a) Count I – Wrongful Discharge, arising out of her termination of

---

[1] Although the CBA was attached as an exhibit to UMass's motion, this Court may consider it in the context of a motion to dismiss because the document's authenticity is not disputed and it is central to Plaintiff's claims. *See Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir.2007).

employment allegedly "without just cause"; (b) Count II – Wrongful Discharge, arising out of alleged defamation of the Plaintiff; (c) Count III – Libel, based upon UMass Memorial allegedly creating written records causing damages of libel against Barry; (d) Count IV – Intentional Infliction of Emotional Distress, arising out of "the accusations of the theft of narcotics, and termination of employment …."; (e) Count V – Declaratory Relief under M.G.L. c. 231A seeking a declaration that "her termination of employment [was] in violation of the SHARE (UMass contract)"; (f) Count VI – Breach of Contract, arising out of an alleged breach of contract of employment; (g) Count VII – Breach of Contract, alleging that "UMass Memorial violated the union contract by terminating her without cause … ." The case was removed to this Court, with jurisdiction based on section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.

UMass has moved to dismiss Counts I, IV, V, VI, and VII, arguing that they are preempted by Section 301 of the LMRA and also contends that Count IV should be dismissed because it is barred by the exclusivity provision in the Workers' Compensation Act.[2]

*Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). In evaluating a motion to

---

[2] The two counts not subject to this motion is Count II, for wrongful discharge arising out of alleged defamation of the Plaintiff, and Count III, for libel.

dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000).

**Discussion**

1. *Preemption by Section 301 of the LMRA*

Section 301 of the LMRA, 29 U.S.C. § 185(a), provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." Although section 301 "on its face is only a grant of federal jurisdiction, the Supreme Court has deemed labor contracts within its scope 'creatures of federal law' and 'treats section 301 as a warrant both for removing to federal court state law claims preempted by section 301 and then dismissing them.'" *Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54 (1st Cir. 2011) (quoting *O'Donnell v. Boggs,* 611 F.3d 50, 53 (1st Cir. 2010)) (citations omitted). "This doctrine 'applies most readily to state-law contract claims purporting to enforce CBAs covered by section 301,' . . . but it 'extends beyond this point to other claims ... whose enforcement interferes with federal labor law and policy.'" *Id.* (quoting *O'Donnell,* 611 F.3d at 53, 54). This type of "interference exists if the state-law claims 'require construing the collective-bargaining agreement.'" *Id.* (quoting *O'Donnell,* 611 F.3d at 54) (citation omitted).

Thus, section 301 preempts a state law claim when the claim "plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.'" *Id.* at 54-55 (quoting *Flibotte v. Pa. Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir. 1997)). A state law claim "'depend[s] on the meaning of a collective bargaining agreement' if either, (1) 'it alleges conduct that arguably constitutes a breach of duty that arises pursuant to a

collective bargaining agreement,' or (2) 'its resolution arguably hinges upon an interpretation of the collective bargaining agreement.'" *Id.* at 55 (quoting *Flibotte,* 131 F.3d at 26) (internal quotation marks omitted); *see Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 10 (1st Cir. 1995) ("It is well-established that § 301 completely preempts a state law claim if the resolution of the claim necessitates analysis of, or substantially depends on the meaning of, a collective bargaining agreement.").

UMass argues that Plaintiff's wrongful termination claim based on being terminated without just cause (Count I) is preempted by section 301 of the LMRA because resolution of the claim would require the Court interpret the CBA to determine if Plaintiff could be terminated without just cause and whether the termination complied with the disciplinary process set forth in the CBA. Plaintiff contends that the issue is only that "there is no cause" for termination and somehow argues that "the union contract is not an issue." This argument is directly contradicted by the language in the complaint, in which Plaintiff claims wrongful termination because she was terminated without just cause, in violation of the CBA. This claim explicitly depends on the CBA, and its resolution requires an interpretation of the CBA in order to determine whether or not Plaintiff was whether there was adequate cause for her termination. Count I is dismissed as preempted by section 301 of the LMRA.

State law contract claims are likewise preempted by Section 301 of the Labor Management Relations Act where resolution of the claim requires the analysis of or depends upon the meaning of a collective bargaining agreement. *Quesnel*, 66 F.3d at 10. "[T]he Supreme Court has deemed labor contracts within its scope 'creatures of federal law' and 'treats section 301 as a warrant both for removing to federal court state law claims preempted by section 301 and then dismissing them.'" *Haggins v. Verizon New England, Inc*., 648 F.3d 50, 54 (1st Cir.

2011) (quoting *O'Donnell v. Boggs*, 611 F.3d 50, 53 (1st Cir. 2010)). "This doctrine 'applies most readily to state-law contract claims purporting to enforce CBAs covered by section 301. . .'" Id. (quoting *O'Donnell*, 611 F.3d at 54).

Here, in Count V, the Plaintiff asserts a claim for declaratory relief under M.G.L. c. 231A seeking a declaration that the Plaintiff's "termination of employment [was] in violation of the SHARE (UMass contract)." In Count VI, the Plaintiff alleges that UMass Memorial breached its "contract of employment with Barry," another reference to the CBA. In Count VII, the Plaintiff, refers to the CBA alleging, "Barry has standing under the contract ... UMass Memorial violated the union contract by terminating her without cause ...". Clearly, resolution of such contract claims require the analysis of and interpretation of the terms of the collective bargaining agreement. As such, the Plaintiff's claims in Counts V, VI, and VII are preempted and should be dismissed.

2.  *Exclusivity Provision of M.G.L. c. 152, §24*

Plaintiff claim in Count IV for the intentional infliction of emotional distress also cannot be sustained. Under Massachusetts law, "[c]ommon law actions are barred by the exclusivity provision of the workers' compensation act where: 'the plaintiff is shown to be an employee; his condition is shown to be a personal injury within the meaning of the [workers'] compensation act; and the injury is shown to have arisen out of and in the course of ... employment.' " *Green v. Wyman–Gordon Co.,* 422 Mass. 551, 558, 664 N.E.2d 808, 813 (1996) (quoting *Foley v. Polaroid Corp.,* 381 Mass. 545, 548–49, 413 N.E.2d 711, 713–14 (1980)) (additional quotations and citation omitted). Claims against an employer for intentional infliction of emotional distress meet this test. *See id.* (affirming dismissal of plaintiff's claim against former employer for intentional infliction of emotional distress arising out of alleged sexual harassment over a three-

year period). *See also*, *Parisi v. Trs. of Hampshire College*, 711 F.Supp. 57, 63 (D.Mass. 1989) (finding claims for emotional distress resulting from employment termination, wrongful or otherwise, are precluded by exclusivity provision). Accordingly, Count IV is dismissed.

## Conclusion

For the foregoing reasons, Defendant's Partial Motion to Dismiss Counts I, IV, V, VI, and VII (Docket No. 7) is **granted.**

**SO ORDERED**.

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**